JS 44C/SDNY
REV. 7/2012

JUDGE McMAHON

CIVIL COVER SHEET

13 CIV 7065

OCT - 4 2013

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Justine Blythe Llop | Vi and Classic Residence In Yonkers |

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Darnley Stewart<br>Giskan Solotaroff Anderson and Stewart LLP<br>11 Broadway Suite 2150 New York, NY 10004 | |

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

42 U.S.C. § 2000e et seq. ("Title VII"), the New York Executive Law, Section 290 et seq., New York Labor Law §741

Has this or a similar case been previously filed in SDNY at any time? No ☒ Yes ☐   Judge Previously Assigned

If yes, was this case  Vol. ☐  Invol. ☐  Dismissed.  No ☐  Yes ☐  If yes, give date _____ & Case No. _____

IS THIS AN INTERNATIONAL ARBITRATION CASE?   No ☒   Yes ☐

*(PLACE AN [x] IN ONE BOX ONLY)*   NATURE OF SUIT

**TORTS**

**ACTIONS UNDER STATUTES**

**CONTRACT**

- [ ] 110 INSURANCE
- [ ] 120 MARINE
- [ ] 130 MILLER ACT
- [ ] 140 NEGOTIABLE INSTRUMENT
- [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
- [ ] 151 MEDICARE ACT
- [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
- [ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS
- [ ] 160 STOCKHOLDERS SUITS
- [ ] 190 OTHER CONTRACT
- [ ] 195 CONTRACT PRODUCT LIABILITY
- [ ] 196 FRANCHISE

**PERSONAL INJURY**

- [ ] 310 AIRPLANE
- [ ] 315 AIRPLANE PRODUCT LIABILITY
- [ ] 320 ASSAULT, LIBEL & SLANDER
- [ ] 330 FEDERAL EMPLOYERS' LIABILITY
- [ ] 340 MARINE
- [ ] 345 MARINE PRODUCT LIABILITY
- [ ] 350 MOTOR VEHICLE
- [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
- [ ] 360 OTHER PERSONAL INJURY

**PERSONAL INJURY**

- [ ] 362 PERSONAL INJURY - MED MALPRACTICE
- [ ] 365 PERSONAL INJURY PRODUCT LIABILITY
- [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**

- [ ] 370 OTHER FRAUD
- [ ] 371 TRUTH IN LENDING
- [ ] 380 OTHER PERSONAL PROPERTY DAMAGE
- [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**FORFEITURE/PENALTY**

- [ ] 610 AGRICULTURE
- [ ] 620 OTHER FOOD & DRUG
- [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
- [ ] 630 LIQUOR LAWS
- [ ] 640 RR & TRUCK
- [ ] 650 AIRLINE REGS
- [ ] 660 OCCUPATIONAL SAFETY/HEALTH
- [ ] 690 OTHER

**LABOR**

- [ ] 710 FAIR LABOR STANDARDS ACT
- [ ] 720 LABOR/MGMT RELATIONS
- [ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
- [ ] 740 RAILWAY LABOR ACT
- [ ] 790 OTHER LABOR LITIGATION
- [ ] 791 EMPL RET INC SECURITY ACT

**BANKRUPTCY**

- [ ] 422 APPEAL 28 USC 158
- [ ] 423 WITHDRAWAL 28 USC 157

**PROPERTY RIGHTS**

- [ ] 820 COPYRIGHTS
- [ ] 830 PATENT
- [ ] 840 TRADEMARK

**SOCIAL SECURITY**

- [ ] 861 HIA (1395ff)
- [ ] 862 BLACK LUNG (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID TITLE XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**

- [ ] 870 TAXES (U.S. Plaintiff or Defendant)
- [ ] 871 IRS-THIRD PARTY 26 USC 7609

**OTHER STATUTES**

- [ ] 400 STATE REAPPORTIONMENT
- [ ] 410 ANTITRUST
- [ ] 430 BANKS & BANKING
- [ ] 450 COMMERCE
- [ ] 460 DEPORTATION
- [ ] 470 RACKETEER INFLU- ENCED & CORRUPT ORGANIZATION ACT (RICO)
- [ ] 480 CONSUMER CREDIT
- [ ] 490 CABLE/SATELLITE TV
- [ ] 810 SELECTIVE SERVICE
- [ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
- [ ] 875 CUSTOMER CHALLENGE 12 USC 3410
- [ ] 890 OTHER STATUTORY ACTIONS
- [ ] 891 AGRICULTURAL ACTS
- [ ] 892 ECONOMIC STABILIZATION ACT
- [ ] 893 ENVIRONMENTAL MATTERS
- [ ] 894 ENERGY ALLOCATION ACT
- [ ] 895 FREEDOM OF INFORMATION ACT
- [ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
- [ ] 950 CONSTITUTIONALITY OF STATE STATUTES

**REAL PROPERTY**

- [ ] 210 LAND CONDEMNATION
- [ ] 220 FORECLOSURE
- [ ] 230 RENT LEASE & EJECTMENT
- [ ] 240 TORTS TO LAND
- [ ] 245 TORT PRODUCT LIABILITY
- [ ] 290 ALL OTHER REAL PROPERTY

**ACTIONS UNDER STATUTES**

**CIVIL RIGHTS**

- [ ] 441 VOTING
- [x] 442 EMPLOYMENT
- [ ] 443 HOUSING/ ACCOMMODATIONS
- [ ] 444 WELFARE
- [ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
- [ ] 446 AMERICANS WITH DISABILITIES -OTHER
- [ ] 440 OTHER CIVIL RIGHTS (Non-Prisoner)

**PRISONER PETITIONS**

- [ ] 510 MOTIONS TO VACATE SENTENCE 20 USC 2255
- [ ] 530 HABEAS CORPUS
- [ ] 535 DEATH PENALTY
- [ ] 540 MANDAMUS & OTHER

**PRISONER CIVIL RIGHTS**

- [ ] 550 CIVIL RIGHTS
- [ ] 555 PRISON CONDITION

**IMMIGRATION**

- [ ] 462 NATURALIZATION APPLICATION
- [ ] 463 HABEAS CORPUS- ALIEN DETAINEE
- [ ] 465 OTHER IMMIGRATION ACTIONS

---

*Check if demanded in complaint:*

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ TBD _____  OTHER _____

*Check YES only if demanded in complaint*

JURY DEMAND: ☒ YES ☐ NO

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.? IF SO, STATE:

JUDGE _____  DOCKET NUMBER _____

NOTE:  Please submit at the time of filing an explanation of why cases are deemed related.

(PLACE AN x IN ONE BOX ONLY)                                                    **ORIGIN**

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from (Specify District)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge Judgment

☐ a. all parties represented

☐ b. At least one party is pro se.

(PLACE AN x IN ONE BOX ONLY)                    **BASIS OF JURISDICTION**                    **IF DIVERSITY, INDICATE CITIZENSHIP BELOW. (28 USC 1332, 1441)**

☐ 1 U.S. PLAINTIFF   ☐ 2 U.S. DEFENDANT   ☒ 3 FEDERAL QUESTION (U.S. NOT A PARTY)   ☐ 4 DIVERSITY

**CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)**

(Place an [X] in one box for Plaintiff and one box for Defendant)

|  | PTF | DEF |  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

Justine Blythe Llop
142 East 16th St, Apt. 19G, New York, NY 10003

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

Classic Residence 537 Riverdale Avenue, Yonkers, New York 10705

Vi 71 South Wacker Drive, Suite 900 Chicago, IL 60606

DEFENDANT(S) ADDRESS UNKNOWN
   REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:   THIS ACTION SHOULD BE ASSIGNED TO:   ☐ WHITE PLAINS   ☒ MANHATTAN
(DO NOT check either box if this a PRISONER PETITION/PRISONER CIVIL RIGHTS COMPLAINT.)

DATE 9/1/2013   10/4/2013   SIGNATURE OF ATTORNEY OF RECORD        ADMITTED TO PRACTICE IN THIS DISTRICT
[ ] NO
☒ YES (DATE ADMITTED Mo. 6   Yr. 1993 )
RECEIPT #                                                 Attorney Bar Code # 2550267

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ MAG. JUDGE DOLINGER _____ is so Designated.

Ruby J. Krajick, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

JUDGE McMAHON

GISKAN SOLOTAROFF ANDERSON & STEWART LLP
11 Broadway, Suite 2150
New York, New York 10004
(212) 500-5106
By: Darnley D. Stewart  (DS 0835)

**13 CIV 7065**

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

JUSTINE BLYTHE LLOP,

                 Plaintiff,

         -against-

Vi, and CLASSIC RESIDENCE IN
YONKERS,

                 Defendants.

----------------------------------------------------------------------X

RECEIVED
OCT - 4 2013
U.S.D.C. S.D. N.Y.
CASHIERS

_____ cv _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

       Plaintiff Justine Blythe Llop, by and through her attorneys, Giskan Solotaroff Anderson

& Stewart LLP, alleges the following:

## NATURE OF THIS ACTION

      1.      Plaintiff brings this pregnancy discrimination and medical whistleblower action

against her former employers, Vi and Classic Residence In Yonkers ("Classic Residence",

"CRY," or the "Company"), pursuant to Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the New York Executive Law, Section 290

*et seq*. (the "Executive Law"), and New York Labor Law §741.

      2.      Plaintiff seeks compensatory and punitive damages, emotional distress damages,

attorneys' fees, and other appropriate relief under those provisions.

## THE PARTIES

3.      Plaintiff Justine Blythe Llop, the former Assistant Director of Nursing at Classic Residence, resides in New York, New York, and is a female citizen of the United States.  Ms. Llop was pregnant at the time of her termination on April 10, 2012.

4.      Defendant Vi, formerly known as Classic Residence by Hyatt, develops, owns and manages residential communities for older adults.  It operates ten (10) continuing care retirement communities in Arizona, California, Colorado, Florida, and Illinois, and one rental senior living community, defendant Classic Residence, in Yonkers, New York.  Vi is headquartered in Chicago and is privately owned by Penny Pritzker.

5.      Defendant Classic Residence in Yonkers is one of the senior living properties owned by defendant Vi.  It was opened in 2000, contains approximately 200 privately owned apartments, 75 personal care units, and 36 Alzheimer's units.  It is located at 537 Riverdale Avenue, Yonkers, New York 10705.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. §§ 1331, 1343.  This Court may assert supplemental jurisdiction over the state law claims as authorized by 28 U.S.C. § 1367 (a).

7.      Venue properly lies within this judicial district as plaintiff resides in this judicial district.

8.      Ms. Llop timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 12, 2012,, and after a failed conciliation, received a right-to-sue letter dated August 19,2013, on or about September 6, 2013.  Accordingly, she has complied with the procedural requirements under Title VII.

## STATEMENT OF FACTS

9.      Plaintiff Llop graduated from Cornell University, *cum laude*, with a Bachelor of Science degree in Human Behavior in 2003.  Throughout college, Ms. Llop worked approximately 30 hours a week to fund her education.  In 2008, she received a Bachelor of Science degree in Nursing from the University of Pennsylvania, and went to work as the Nursing Director for the New York Department of Juvenile Justice, coordinating patient care at several New York City clinics in the Bronx, Brooklyn, and Long Island City.

10.     On or around February 28, 2011, Ms. Llop took a position as one of two Assistant Directors of Nursing at Classic Residence, reporting to the Director of Personal Care, Mary Christianson.  At the time, a woman named Denise Hall was the other Assistant Director of Nursing.  Ms. Llop and Ms. Hall split responsibility for the four floors of the facility.

11.     When Ms. Llop arrived at Classic Residence, the New York State Department of Health inspection had taken place and Classic management was in the process of responding to numerous "findings" of deficiencies reported by the inspectors.  In fact, Ms. Llop was dismayed to learn that Classic Residence's response to the Department's findings had not begun although the State inspection had taken place on December 26, 2010.  Without orientation or training, Ms. Llop was called upon to respond to these "findings."  Ms. Llop discovered that many deficiencies were as much as a year out of date.

12.     Despite the significance of her position, Ms. Llop received no training when she arrived at Classic Residence.  Her supervisor, Ms. Christianson, told Ms. Llop that Ms. Christianson herself was "too new" in her position to provide training to Ms. Llop, even though the training was required by the Department of Health.  Instead, Ms. Christianson assured Ms. Llop that the "corporate office" would provide the requisite training when representatives from the Company's corporate office in Chicago visited the facility in May 2011.

13.     The failure to train Ms. Llop was in violation of New York State law, which requires an "initial program of orientation and in-service training." 18 NYCRR § 488.9.

14.     On May 10 and 11, 2011, JoAnne Carlin, the Vice-President of Resident Care from the Vi Living corporate office, visited Classic Residence to meet with the management and staff.  When Ms. Llop raised the issue of Defendants' failure to train its corporate officers in her presence, Ms. Christianson quickly promised that she would personally train Ms. Llop at a future date.  That training never took place – again in violation of state regulation.

15.     In lieu of the training required by the State, Ms. Llop had previously requested that she at least be provided with a manual containing the policies and procedures of the Company and the facility.  Ms. Christianson initially told Ms. Llop that no such document existed.  However, when the corporate representatives arrived at the facility in May 2011, and Ms. Llop mentioned the issue, Ms. Christianson all of a sudden explained that certain policies were available in Outlook.

16.     On June 1, 2011, the New York State inspectors returned to Classic Residence to follow up on deficiencies identified during inspections that took place prior to Ms. Llop beginning at the facility.  Ms. Llop learned that many of the State-required functional assessments and case management records for the residents for whom she was responsible were more than a year out of date in violation of  18 NYCRR § 488.10.

17.     On June 20, 2011, Denise Hall, Ms. Llop's cohort and the other Assistant Director of Nursing, resigned from Classic Residence.  Upon leaving the facility, Ms. Hall confided in Ms. Llop that she should be wary of very poor management at Classic Residence.

18.     After Denise Hall's resignation, Ms. Llop's workload increased substantially, as she was forced to take on Ms. Hall's responsibilities.  Whereas even before Ms. Hall's departure, Ms. Llop was working more than 50 hours a week, she worked even longer hours after Ms. Hall left.  While Ms. Llop was at her busiest between June and August 2011, she discovered that Ms. Christianson was often absent from the facility because she spent a

significant amount of time at her summer home upstate. For that period of three months, Ms. Llop – who still had not been properly trained – was often left in charge of the *entire* facility, including the Personal Care and Memory Support units. Nonetheless, Ms. Christianson told Ms. Llop both in person and in emails that her work was "very good" and that she was "very happy" with her.

19.     In August 2011, Dawn Mastrangelo was hired to fill Denise Hall's position as an Assistant Director of Nursing. Although Ms. Llop had never been trained, she did her best to provide Ms. Mastrangelo with on-the-job training. Like Ms. Llop, Ms. Mastrangelo received no formal training beyond Ms. Llop's instruction.

20.     In September 2011, Ms. Llop and Ms. Mastrangelo began noticing a change in Ms. Christianson's behavior, which became erratic. More than that, Ms. Christianson was often late or absent from work.

21.     After an incident involving a new resident in early September – which was handled poorly by Ms. Christianson – Ms. Llop arranged a meeting with John Muzio, the Executive Director of Classic Residence to discuss the issues surrounding Ms. Christianson's behavior and job performance. At this meeting, Ms. Llop also reported to Mr. Muzio the issue surrounding the lack of adequate training for either her or Ms. Mastrangelo. Mr. Muzio took no action, and instead told Ms. Llop to approach Ms. Christianson directly with her concerns. When Ms. Llop raised her concerns with Ms. Christianson, Ms. Christianson was furious and immediately threatened loss of previously-scheduled holidays.

22.     In or around October, 2011, Ms. Llop was on duty and was contacted by a resident's daughter, who had power of attorney ("POA") for the resident. The resident had been taken to the hospital after an adverse drug reaction. The resident's daughter asked how her mother had come to be given that particular drug, Neudexta, and Ms. Llop gave her the name of the consulting doctor, Dr. Bayrakdarian, who had prescribed the drug. The resident's daughter wanted to know who this doctor was, and how her mother came to be under his care. She requested that no unauthorized providers see her mother or make unauthorized changes to

her care, which Ms. Llop reported to appropriate staff. A pharmacy employee overheard the conversation and told Dr. Bayrakdarian that Ms. Llop had informed the resident's daughter of his name and the resident's nurse of the incident.

23.     Ms. Llop later learned that Ms. Christianson had referred the resident to Dr. Bayrakdarian herself. She did so without the POA's consent or knowledge, even though such consent was required, and the resident's chosen physician who was responsible for the overall management and care of the resident's physical and mental health needs was not alerted. Moreover, the patient was prescribed Neudexta for a condition that was not indicated.

24.     Dr. Bayrakdarian complained about Ms. Llop's disclosure to her supervisors, and Ms. Christianson summoned Ms. Llop to a disciplinary meeting with Elaine Garcia. Ms. Garcia criticized Ms. Llop for jeopardizing the "business relationship" between Dr. Bayrakdarian and the facility. Ms. Llop would learn that this so-called "business relationship" was a handshake agreement between Ms. Christianson and Dr. Bayrakdarian whereby all Personal Care residents would be referred to his care – an arrangement which is unethical, if not illegal, as New York State prohibits facility personnel from "steering" patients to specific providers and from making medical decisions for the residents. 18 NYCRR § 488.5.

25.     Following the incident with Dr. Bayrakdarian, Ms. Llop arranged a second formal meeting with Mr. Muzio to voice her concerns about Ms. Christianson and resident care.

26.     In November 2011, Ms. Llop learned that she was pregnant and began exhibiting classic symptoms of morning sickness, including nausea and aversions to certain foods. One of the nurses at Classic Residence observed Ms. Llop's symptoms and said to Ms. Christianson, "I bet Justine is pregnant." Ms. Christianson responded, "She had better not be." The nurse related this conversation to Ms. Llop on two occasions following the eventual announcement of her pregnancy on January 11, 2012.

27.     On January 11, 2012, Ms. Llop again met with JoAnne Carlin from the Vi
Living corporate office.  During this meeting, Ms. Llop told Ms. Carlin that she was pregnant.
Ms. Carlin told Ms. Llop that she should report her pregnancy to the facility management that
same day.  Ms. Llop articulated her fear that reporting her pregnancy to Ms. Christianson
would place her job in jeopardy.  Ms. Carlin- responded that such an action would be illegal.
Ms. Llop again raised the issue of Ms. Christianson's erratic behavior and frequent absence as
a manager and, more specifically, as the Director of Personal Care of the facility.  Ms. Carlin
told Ms. Llop that she needed to "manage [her] manager" but took no other action.

28.     In January 2012, Ms. Christianson informed Classic Residence management that
she would be leaving the facility to take another job.  Neither Ms. Llop nor any of the staff
was informed of her impending departure at this time.

29.     That same month, two inspectors from the New York State Department of
Health visited Classic Residence to conduct the annual review.  At the conclusion of the
review, Classic Residence obtained the highest rate of compliance in the history of the facility.
During the oral review at the conclusion of the inspection, the inspectors singled out Ms.
Llop's floors as the reason for a "huge improvement in case management documentation" and
personally thanked her for the improvement as compared to prior years when the lack of notes
had resulted in deficiency findings.

30.     On February 21, 2012, Ms. Christianson conducted Ms. Llop's annual review
with Elaine Garcia.  Despite Ms. Llop's good work, the review was unduly negative, and
specifically highlighted the incident with Dr. Bayrakdarian.

31.     The next day, Ms. Llop met with Elaine Garcia to discuss the content of her
review.  Ms. Llop articulated her belief that the review had no relation to her actual job
performance, and that Ms. Christianson was attempting to use the facility's disciplinary
procedure to retaliate against her.  Ms. Garcia said she would meet with Ms. Christianson and
Ms. Llop together the next day.

32.     The next day, Ms. Garcia begged off and said she was not available to meet.  Ms. Llop met with Ms. Christianson to discuss the content of her evaluation. During the meeting, Ms. Christianson told Ms. Llop that she was "very twisted" about the review.  However, Ms. Christianson did not discuss Ms. Llop's evaluation, but instead dismissed its relevance, stating, "It's wasn't you.  It's the evaluation tool."  Despite these comments by Ms. Christianson, the derogatory review remained unchanged in Ms. Llop's employment file.

33.     Between March 3 and March 18, Ms. Llop was away for her long-delayed honeymoon.  When she returned to work on March 19, she learned for the first time that Ms. Christianson's last day of work would be March 23.  Ms. Llop was then tasked with certain of Ms. Christianson's job duties in addition to her own – including creating the LPN nurses' schedules.

34.     On March 21, Ms. Llop met with JoAnne Carlin and raised her objections to the content of her performance review. JoAnne Carlin stated that she was unaware of Ms. Llop's negative performance review, and the incidents described in it. In this meeting, Ms. Llop also described the challenging operating environment under Ms. Christianson's supervision, including demands that sometimes conflicted with State regulations.  Ms. Carlin stated that, "Mary is gone now and things will now be done properly."

35.     On March 23, Ms. Llop asked for a secondary review process concerning her performance, but Ms. Garcia and Mr. Muzio denied her request. Mr. Muzio stated that the "evaluation was in the past" and that he was "unwilling to revisit" the matter of Ms. Llop's review.

36.     On March 27, 2012, Ms. Llop led the monthly nurses' meeting. As instructed by management – although without any guidance – Ms. Llop distributed a form seeking the nurses' respective schedules and availability to work so she could set the schedule.

37.     The next day, March 28, 2012, Mr. Muzio and Ms. Garcia called Ms. Llop into a disciplinary meeting where they criticized the manner in which she had surveyed the staff in setting the schedule. At the conclusion of the meeting, Mr. Muzio and Ms. Garcia placed Ms. Llop on "administrative leave" pending the outcome of an investigation.

38.     On April 3, 2012, Ms. Garcia called Ms. Llop to ask her to come to Classic Residence for a meeting on April 5.

39.     On April 5, 2012, Ms. Llop met with Mr. Muzio and Ms. Garcia. Ms. Garcia opened the meeting by saying that she did not think that Ms. Llop was "successful" in the Assistant Director of Nursing position and that they did not think she had "learned the lessons" of the Dr. Bayrakdarian incident. Ms. Garcia told Ms. Llop that she would have to accept a demotion from the Assistant Director of Nursing to a LPN floor nurse position. Whereas Ms. Llop had successfully supervised 80 floor nurses and personal care assistants, she was now being told she would be demoted to the same position that she had previously supervised. Ms. Llop was six months pregnant at this time.

40.     The same day, Classic Residence posted Ms. Llop's position as "available" on its external website.

41.     On April 10, 2012, Ms. Llop met with Ms. Garcia and Mr. Muzio again. At this meeting, Ms. Llop handed Ms. Garcia a letter alleging that she was the victim of unlawful discrimination and retaliation and insisting that she would not accept the demotion. Mr. Muzio and Ms. Garcia told Ms. Llop she was terminated.

## FIRST CAUSE OF ACTION

### Pregnancy Discrimination In Violation of Title VII

42.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

43.     Defendants discriminated against Ms. Llop on the basis of her gender and/or pregnancy in violation of Title VII by treating her differently from and less favorably than similarly situated employees who were not pregnant, and by terminating her employment because she was pregnant.

44.     As a result of the discrimination engaged in by defendants, plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which she in entitled to an award of monetary damages and other relief.

45.     As a direct and proximate result of defendants' unlawful discriminatory conduct in violation of Title VII, plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of compensatory damages and other relief.

46.     Defendants' discriminatory actions in violation of Title VII were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Ms. Llop's civil rights, for which she is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION

### Retaliatory Discharge In Violation of Title VII

47.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

48.     Defendants were at all relevant times herein plaintiff's joint employers, as that term is defined under Title VII.

49.     Defendants, through their agents and representatives, penalized Ms. Llop because of her opposition to and complaints about defendants' discriminatory treatment of her.

50.     Defendants' termination of Ms. Llop's employment was in retaliation for her opposition to and complaints about defendant's discriminatory conduct toward her.

51.     As a result of the retaliation engaged in by defendants, plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which she in entitled to an award of monetary damages and other relief.

52.     As a direct and proximate result of defendants' unlawful retaliatory conduct in violation of Title VII, plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of compensatory damages and other relief.

53.     Defendants' retaliatory actions in violation of Title VII were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Ms. Llop's civil rights, for which she is entitled to an award of punitive damages.

### THIRD CAUSE OF ACTION

### Retaliatory Discharge in Violation of the New York State Executive Law

54.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

55.     Defendants were at all relevant times herein plaintiff's joint employers, as that term is defined under the New York State Executive Law.

56.     Defendants, through their agents and representatives, penalized Ms. Llop because of her opposition to and complaints about defendants' discriminatory treatment of her.

57.     Defendants' termination of Ms. Llop's employment was in retaliation for her opposition to and complaints about defendant's discriminatory conduct toward her.

58.     As a result of the retaliation engaged in by defendants, plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which she in entitled to an award of monetary damages and other relief.

59.     As a direct and proximate result of defendants' unlawful retaliatory conduct in violation of the New York State Executive Law, plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of compensatory damages and other relief.

60.     Defendants' retaliatory actions in violation of the New York State Executive Law were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Ms. Llop's civil rights, for which she is entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION

### Pregnancy Discrimination
### In Violation of the New York State Executive Law

61.     Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

62.     Defendants discriminated against Ms. Llop on the basis of her gender and/or pregnancy in violation of the New York States Executive Law by treating her differently from and less favorably than similarly situated employees who were not pregnant, and by terminating her employment because she was pregnant.

63.     As a result of the discrimination engaged in by defendants' plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which she in entitled to an award of monetary damages and other relief.

64.     As a direct and proximate result of defendants' unlawful discriminatory conduct in violation of the New York State Executive Law, plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of compensatory damages and other relief.

65.     Defendants' discriminatory actions in violation of the New York State Executive Law were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Ms. Llop's civil rights, for which she is entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION

### Retaliation In Violation of N.Y. Labor Law §741

66.     Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

67.     Ms. Llop, an employee of Classic Residence, disclosed to a supervisor  certain practices of Classic Residence, which she reasonably believed posed substantial and specific danger and significant threat to the health of residents at Classic Residence and which constituted improper quality of resident care within the meaning of New York Labor Law §741(1)(d).

68.     In response to Ms. Llop's objections, defendants retaliated against her by demoting her, and then terminating her employment in violation of N.Y. Labor Law §741.

**WHEREFORE,** Plaintiff demands that judgment be entered in her favor and that the Court order and award her the following relief against defendants

A.     A declaratory judgment that the actions, conduct and practices of Vi and Classic Residence complained of herein violate the laws of the United States and the State of New York;

B.     An order directing defendants to place plaintiff in the position she would have occupied but for defendant's discrimination, as well as take such affirmative action, including reinstatement, as necessary to ensure that the effects of these unlawful employment practices are eliminated and do not affect plaintiff's employment;

C.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate plaintiff for all non-monetary and compensatory harm, including, but not limited to, compensation for her humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering;

D.     An award of damages for any and all monetary and/or non-monetary losses suffered by plaintiff in an amount to be determined at trial, plus prejudgment interest;

E.     An award of punitive damages.

F.     Attorneys fees;

G.     Costs and disbursements;

H.     Interest; and

I.     Such other and further relief as this Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a trial by jury as to all issues in the above matter.

Dated: New York, New York
      October 4, 2013

                    Respectfully submitted,

                    GISKAN SOLOTAROFF
                  ANDERSON & STEWART LLP

By:_____
                    Darnley D. Stewart (DS  0835)
                    dstewart@gslawny.com
                    11 Broadway
                    New York, New York 10004
                    (212) 847-8315

                    *Attorneys for Plaintiff*

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | |
|---|---|
| Justine Blythe Llop <br><br> _____ <br> *Plaintiff(s)* <br> v. <br><br> Classic Residence <br><br> _____ <br> *Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

13 CIV 7065

Civil Action No.         JUDGE McMAHON

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Classic Residence 537 Riverdale Avenue, Yonkers, New York 10705

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

RUBY J. KRAJICK

*CLERK OF COURT*

Date:  OCT - 4 2013     _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                              *Server's signature*

                                               _____
                                                              *Printed name and title*

                                               _____
                                                              *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | |
|---|---|
| Justine Blythe Llop ) | **13 CIV 7065** |
| ) | |
| ) | |
| _____ ) | **JUDGE McMAHON** |
| *Plaintiff(s)* ) | |
| v. ) | Civil Action No. |
| Vi ) | |
| ) | |
| ) | |
| _____ ) | |
| *Defendant(s)* ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Vi 71 South Wacker Drive, Suite 900 Chicago, IL 60606

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

RUBY J. KRAJICK
*CLERK OF COURT*

OCT - 4 2013

Date: _____          _____
                                        *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.


Date: _____               _____
                                              *Server's signature*

                                       _____
                                              *Printed name and title*

                                       _____
                                              *Server's address*

Additional information regarding attempted service, etc: